IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JUSTIN SHUFORD, RYAN ANISKO and ANDRES DE JESUS, on behalf of themselves and all others similarly situated, | * * * * | |
| | * | **COMPLAINT – CLASS ACTION** |
| Plaintiffs, | * | |
| v. | * | CIVIL ACTION FILE NO. |
| | * | |
| R.L. "BUTCH" CONWAY, Sheriff of Gwinnett County, Georgia, COLONEL DON PINKARD, Administrator of the Gwinnett County Jail, and LT. COL. CARL SIMS, Commander of the Rapid Response Team at the Gwinnett County Jail, | * * * * * * * | |
| | * | |
| Defendants. | * | |

**COMPLAINT FOR INJUNCTIVE RELIEF
AND MONETARY DAMAGES**

COME NOW Plaintiffs JASON SHUFORD, RYAN ANISKO and ANDRES DE JESUS, on behalf of themselves and all others similarly situated, and hereby file this class action complaint for injunctive and monetary relief against the above named Defendants as follows:

**INTRODUCTION**

1.    By this action, Plaintiffs seek to end the pattern and practice of

unnecessary and excessive force inflicted upon hundreds of inmates of the Gwinnett County Jail by a Rapid Response Team that is mobilized on a daily basis to subject detainees to gratuitous, punitive, and sadistic pain in retaliation for loud, intoxicated, or alleged noncompliant behavior when said detainees are contained in a secure environment such as a holding cell, are not posing a threat to the safety of themselves or others, and there is no present justification for the use of such force. Defendants are jail administrators and commanders who have created and now perpetuate a policy of permitting the Rapid Response Team to use unlawful, excessive force with impunity.  These Defendants have not only condoned and failed to control unconstitutional activity by the Rapid Response Team, they have directed and encouraged it.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1343.  Plaintiff also invokes the Court's supplemental jurisdiction to hear pendent state law claims under 28 U.S.C. §1367.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3) because the events and omissions giving rise to Plaintiff's cause of action occurred within this District and which is situated within the district divisional boundaries of the Atlanta Division of the Northern District of Georgia,

and because one or more of the parties reside within said district and division. All of the parties herein are subject to the jurisdiction of this Court.

## PARTIES

4.      Plaintiffs Jason Shuford, Ryan Anisko and Andres De Jesus, and (hereafter "Shuford," "Anisko" and "De Jesus," respectively, or collectively referred to as "Plaintiffs") are residents of the Northern District of Georgia who were at one time incarcerated in the Gwinnett County Jail but are not presently incarcerated in any jail, prison or correctional facility.

5.      Defendant R.L. "Butch" Conway (hereafter "sheriff" or "Conway") is, and was at all times relevant to this Complaint, the duly elected Sheriff of Gwinnett County, Georgia.

6.      Defendant Colonel Don Pinkard (hereafter "Pinkard") is, and was at all times relevant to this Complaint, Administrator of the Gwinnett County Jail acting under the authority or direction of Sheriff Conway.

7.      Defendant Lieutenant Colonel Carl Sims (hereafter "Sims") is, and was at all times relevant to this Complaint, the Deputy Administrator of the Gwinnett County Jail and the Commander of the jail's Rapid Response Team acting under the authority or direction of Sheriff Conway and Colonel Pinkard.

8.      At all times relevant herein, said Defendants acted under color of state

law and within the scope of their employment and authority as employees or agents of the Gwinnett County Sheriff's Department.

## CLASS ALLEGATIONS

9.      Plaintiffs bring this class action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), and in accordance with the requirements of Northern District Local Rule 23.1.

**A.      Class Definition**

10.     Plaintiffs seek certification of a class of individuals (the "Class") defined as follows:

> All inmates who have been or will be unconstitutionally subjected to the use of gratuitous, unnecessary and punitive force by the Rapid Response Team at the Gwinnett County Jail at any time after July 5, 2011.

11.     Plaintiffs reserve their right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate, and thereafter if reasonably necessary and appropriate.

**B.      Numerosity**

12.     The Class is comprised of several hundred individuals. As a result, joinder of all members of the Class is impractical.

13.     The Court may ascertain the exact size of the Class and the identities

of the individual members thereof through Defendant's records, which are in exclusive control of Defendant.  Plaintiffs' counsel is, however, aware of the identity of between one hundred and two hundred class members based upon documents and videotapes of Rapid Response Team incidents between October 2012 and May 2013 that were obtained under the Georgia Open Records Act. Similar videotapes are in Defendants' custody for the entire time period that is relevant for purposes of the Class definition.

14.     Notice of the pendency of this action to Class members may be readily accomplished by techniques and forms commonly used in class actions, such as published notice, e-mail notice, website notices, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary or appropriate by this Court.   Because all Class members were incarcerated in the Gwinnett County Jail, Defendants have access to arrest and booking records containing the last known addresses and other contact information for each Class member.

15.     This case centers on Defendants' unconstitutional practice of routinely using excessive force against inmates deemed uncooperative but where there is no legal justification for the use of force, and the damages suffered by each individual Class member would not be substantial enough to warrant hundreds of

individual lawsuits involving attorney fees and litigation expenses that would be more substantial on an individual basis than the damages that would likely be recovered by each Class member.

16.     In the interest of judicial economy, the Court should determine Defendants' liability for all Class members in a single action rather than having hundreds of cases for the same cause of action pending in the same Court.

## C.     Typicality

17.     Plaintiffs' claims are typical of the claims of all members of the Class.

18.     Plaintiffs possess the same interest as every other Class member and have suffered the same injury as all Class members, namely the violation of their constitutional right to be free from excessive force and the resulting damages.

19.     Plaintiffs' claims and the claims of each Class member are based on the same legal theories and arise from the same unlawful conduct, namely the systemic abuse of inmates at the direction of the Defendant administrators and commanders or caused by their policies and training.

20.     Plaintiffs and each Class member were similarly situated inmates at the Gwinnett County Jail who were unconstitutionally subjected to the same conduct caused by the same Defendants.

**D.    Common Questions of Law and Fact**

21.     This case presents many common questions of law and fact.

22.     Common questions of law and fact to Plaintiffs and the Class predominate over any questions that may affect individual members.

23.     Common questions of law and fact concerning Defendants' unconstitutional conduct include:

a.     Whether the Rapid Response Team at the Gwinnett County Jail was routinely deployed to inflict gratuitous, unnecessary and punitive force against Plaintiffs and the Class, all of whom were contained in a secure environment, subdued, and not posing a threat of injury or escape;

b.     Whether Defendants directed and trained the Rapid Response Team to inflict gratuitous, unnecessary and punitive force against inmates who were contained in a secure environment, subdued, and not posing a threat of injury or escape;

c.     Whether Defendants maintained customs and policies that caused the Rapid Response Team to inflict gratuitous, unnecessary and punitive force against Plaintiffs and the Class when they were contained in a secure environment, subdued, and not posing a threat of injury or escape;

d.     Whether Plaintiffs and members of the Class are entitled to actual damages, injunctive relief, costs and attorney's fees for Defendants's acts and

conduct;

e.      Whether Plaintiffs and the Class are entitled to punitive damages for Defendants' willful and wanton misconduct in causing the systemic abuse of inmates with deliberate indifference to the rights of Plaintiffs and the Class; and

f.      Whether Defendants' unconstitutional conduct is continuing, and whether members of the Class will continue to suffer damages if the conduct is not permanently enjoined.

24.     Resolution of any of the above questions of law or fact common to the Class will affect all of the Class members.

**E.     Adequacy of Representation**

25.     Plaintiffs are members of the Class as defined above.

26.     Through their attorneys, Plaintiffs can and will fairly, adequately and vigorously prosecute the claims of the Class and represent and protect the interests of the members of the Class.

27.     Plaintiffs have suffered the same injury as the Class members, that injury being the violation of their constitutional right to be free from excessive force and the resulting damages.

28.     Plaintiffs have the same interest as the Class members.  Plaintiffs' interests include recovering compensatory damages for their injuries and obtaining

equitable relief to prevent future abuses by Defendants in the event that Plaintiffs or other Class members again find themselves at the Gwinnett County Jail.

29.     Plaintiffs have no interests antagonistic to or in conflict with the members of the Class.

30.     Plaintiffs' counsel is able, competent and qualified to prosecute this class action litigation on behalf of Plaintiffs and the Class.  The undersigned lead counsel has argued civil rights cases in the United States Supreme Court, including one involving similar issues of excessive force and prolonged restraint against inmates, and counsel's law firm is experienced in handling class actions.

**F.     Predominance and Superiority**

31.     Common questions of law or fact predominate over individual issues. The issues of whether Defendants have caused systemic abuse of inmates and caused inmates to be routinely deprived of constitutional rights due to defective customs, policies and training are common to all Class members and will not vary from individual to individual.

32.     Proceeding as a class action in this case is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and the Class. Relative to the substantial damages that may be awarded to the Class in the aggregate, the damages suffered by members of the Class are individually modest.

Therefore, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for Defendant's wrongdoings.

33.     Furthermore, individualized litigation would present the potential for varying, inconsistent, or contradictory judgments, and would likely cause delay and additional expense to all parties and the court system resulting from multiple trials of the same factual issues. Proceeding as a class action presents fewer management difficulties, conserves the resources of the parties and the court system and would protect the rights of each member of the Class.

34.     Plaintiffs are aware of no difficulty to be encountered in managing of this action that would preclude its maintenance as a class action.  A class action would be more maintainable than several hundred individual actions, which presumably would also be brought in this Court.

## FACTS RELATING TO PLAINTIFFS

35.     On April 11, 2013, Plaintiff Jason Shuford was a pretrial detainee in the Gwinnett County Jail.  He was unhappy about having been arrested and made verbal statements to that effect.  He was placed in a holding cell while waiting to be processed into the facility.

36.     After Shuford had been alone in the holding cell for an extended

period of time in which he posed no threat of injury or escape, the jail's Rapid Response Team – which a tactical unit comprised of several officers wearing all black with helmets, masks and full riot gear – suddenly entered the cell without warning.  They grabbed Shuford, who was sitting on a bench, and forcibly threw him to the floor, where several officers put their weight on him and deliberately applied pressure points to various parts of his body for the purpose of inflicting pain.

37.    Despite being subjected to such malicious and sadistic force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Shuford remained calm and did not offer any physical resistance of any kind.

38.    The Rapid Response Team then put Shuford into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for approximately four hours without regard for the fact that such restraint was not justified.

39.    On February 18, 2013, Plaintiff Ryan Anisko was a pretrial detainee in the Gwinnett County Jail.  He was unhappy about having been arrested and made verbal statements to that effect.  He was placed in a holding cell while waiting to be processed into the facility.  After repeatedly asking through the cell

door window for a pen to fill out the paperwork they had given him, Anisko was instructed to lie down on the floor and he complied with that instruction.

40.    After Anisko had been alone in the holding cell for an extended period of time in which he posed no threat of injury or escape, the jail's Rapid Response Team – a tactical unit comprised of several officers wearing all black with helmets, masks and full riot gear – suddenly entered the cell without warning.  They jumped on Anisko, who was still lying on the floor as he was told to do, where several officers put their weight on him and deliberately applied pressure points to various parts of his body for the purpose of inflicting pain.

41.    Despite being subjected to such malicious and sadistic force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff Anisko remained calm and did not offer any physical resistance of any kind.

42.    The Rapid Response Team then put Anisko into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for approximately four hours without regard for the fact that such restraint was not justified.

43.    On June 16, 2013, Plaintiff Andres De Jesus was an inmate in the Gwinnett County Jail.  He was unhappy about having been arrested and made

verbal statements to that effect.  He was placed in a holding cell while waiting to be processed into the facility.

44.     After De Jesus had been alone in the holding cell for an extended period of time in which he posed no threat of injury or escape, the jail's Rapid Response Team – a tactical unit comprised of several officers wearing all black with helmets, masks and full riot gear – suddenly entered the cell without warning. They grabbed De Jesus, who had dozed off on a bench, and forcibly threw him to the floor, where several officers put their weight on him and deliberately applied pressure points to various parts of his body for the purpose of inflicting pain.

45.     Despite being subjected to such malicious and sadistic force – which was applied solely for punitive purposes and not in a good faith effort to maintain order and discipline – Plaintiff De Jesus remained calm and did not offer any physical resistance of any kind.

46.     The Rapid Response Team then put De Jesus into a restraint chair, despite the fact that there was no need for him to be restrained at all, and then left him restrained in the chair for approximately four hours without regard for the fact that such restraint was not justified.

47.     During the two years immediately preceding the filing of this lawsuit, which is the period of time for which damages may be recovered by Plaintiffs and

the Class under the applicable statute of limitations, several hundred similarly situated Class members have been similarly subjected to the aforementioned conduct of the Rapid Response Team.

## FACTS RELATING TO DEFENDANTS

48.     At all times relevant herein, Defendants maintained a Rapid Response Team, presently comprised of approximately twenty detention officers, that was established in the year 2000 to serve as an onsite elite unit capable of providing a prompt tactical response in the event or a riot or other emergency within the jail.

49.     During the time frame relevant herein, Defendants have improperly used the Rapid Response Team for unconstitutional purposes such as the punitive use of force and the wanton and unnecessary infliction of gratuitous pain against inmates who were deemed uncooperative but did not pose a threat justifying the use of force against them.

50.     During the time frame that is relevant for purposes of the Class definition, Defendants have caused the Rapid Response Team to routinely use excessive force against Plaintiffs and the Class on several hundred occasions.

51.     At all times relevant herein, Defendants have directed the Rapid Response Team to engage in the systemic use of excessive force against Plaintiffs and Class members, have trained the Rapid Response Team to use excessive force

against Plaintiffs and the Class, have instituted policies that caused the Rapid Response Team to systematically use excessive force in violation of the constitutional rights of Plaintiffs and the Class, and have condoned, encouraged and approved such use of excessive force with deliberate indifference to the constitutional rights of Plaintiffs and the Class.

52.    The use of excessive force by the Rapid Response Team is so frequent, pervasive, and well documented that it rises to the level of a pattern or practice of using excessive force, which is tantamount to an official custom or policy that constitutes the Defendants' actual policy irrespective of what their written policy manual may represent to be their policy.

53.    For example, the jail's written use of force policy, which was adopted or approved by Defendant Conway – or by Defendant Pinkard under authority delegated to him by the sheriff – as final policymaker(s) and decisionmaker(s) with regard to use of force in the jail, states that officers in the jail should "use only that force which is necessary to maintain the security and safety of all persons, staff, and inmates," but it is clear in practice that the jail's actual policy is to tolerate excessive force by the Rapid Response Team on a daily basis.

54.    The jail's written use of force policy also states that "no facility employees will strike or lay hands on any inmate except when it is necessary to

prevent escape, to prevent injury to other persons and/or damage to property, to quell a disturbance, or as is otherwise necessary in the lawful discharge of their duties," but it is evident on a daily basis that the Rapid Response Team is permitted, encouraged, and expected to "lay hands on" or otherwise use force against inmates where there is no justification for the use of force under the law or under the empty words of the policy, indicating that the custom, practice and actual policy of the jail is to give the Rapid Response Team authority to use excessive force anytime it is deployed.

55.    To the extent that the jail's written use of force policy is actually followed rather than ignored, it causes the use of excessive force because it authorizes officers to use force to "quell a disturbance" without defining what a disturbance is, leading officers to believe that they can use force anytime an inmate makes noise even though the inmate poses no actual threat justifying the use of force under the law.

56.    To the extent that it is followed at all, the written use of force policy is also defective because it leads officers to believe that they can enter a holding cell and use force – thereby injuring an inmate – in order to prevent the inmate from injuring himself, which has been cited on many occasions as the justification for the Rapid Response Team to enter a holding cell and use force against an inmate

16

who is knocking on the cell door to get the attention of a staff member. The written use of force policy specifically gives officers the authority to use restraints in response to self-harming behavior, and since the use of restraint is considered a use force which the Rapid Response Team routinely uses as the culmination of its use of force deployments, it is evident in practice that the Rapid Response Team equates the alleged justification for restraint with the alleged justification for force since they are routinely applied together.  Both the alleged policy as written and the actual policy as applied in practice result in the unnecessary and punitive use of force, including prolonged restraint, against inmates.

57.    Similarly, the jail's written use of force policy provides that "any staff member who encounters an uncooperative inmate" and is unable to persuade the inmate to cooperate using verbal communications "should never hesitate to summon assistance when necessary," implying that force is the next step to dealing with an uncooperative inmate without defining what "uncooperative" means, with the result being that the policy – if followed – causes staff members to summon the Rapid Response Team, which routinely uses excessive force in responding to the incidents in which it is deployed, without regard for whether the inmate's perceived lack of cooperation lawfully justifies the use of force.

58.    Based upon a review of approximately two hundred videos and use of

17

force reports documenting the use of force by the Rapid Response Team in just a recent six month period, it is also evident that it is the Defendants' custom, practice and policy as supervisors and commanders of the Rapid Response Team that every inmate who is subjected to the use of force by the Team be placed in a restraint chair and continually restrained for a period of approximately four hours without regard for whether the use of force or restraints was justified in the first place, and without regard for whether prolonged continuous restraint is necessary for a four-hour period.

59.     As Commander of the Rapid Response Team, Defendant Sims has actual knowledge of the fact that the Team routinely uses excessive force against inmates, including Plaintiffs and members of the Class, and has in fact trained and directed the Team to use such force with deliberate indifference to the constitutional rights of Plaintiffs and the Class.

60.     As jail administrator, commander of the jail staff, and the policymaker responsible for developing and implementing jail policy under authority delegated by the sheriff, Defendant Pinkard has actual knowledge of the fact that the Team routinely uses excessive force against inmates, including Plaintiffs and members of the Class, and has adopted or approved both formal and informal policies that have caused the Team to use excessive force against Plaintiffs and the Class, and has

tolerated and condoned the use of excessive force by the Team with deliberate indifference to the constitutional rights of Plaintiffs and the Class.

61.     As sheriff, Defendant Conway is the final decisionmaker and ultimate policymaker of the Gwinnett County Jail, responsible for the oversight, supervision and training of his deputies and detention officers. As sheriff, Defendant Conway has actual knowledge of the fact that the Team routinely uses excessive force against inmates, including Plaintiffs and members of the Class, has adopted or approved both formal and informal policies that have caused the Team to use excessive force against Plaintiffs and the Class, and has tolerated and condoned the use of excessive force by the Team with deliberate indifference to the constitutional rights of Plaintiffs and the Class.   At all times relevant herein, Conway knew that it was foreseeable that Defendant Sims and the Rapid Response Team under his command would violate the constitutional rights of inmates such as Plaintiff and the Class by using excessive force against them, and Conway had actual knowledge that Defendant Sims and the Rapid Response Team under his command were in fact using excessive force and violating constitutional rights of inmates such as Plaintiffs and the Class.

62.     Defendants have actual knowledge of the use of excessive force by the Rapid Response Team as follows:

a.      They have received complaints or criticism about the Team from inmates and staff members, including but not limited to complaints about Sims made directly to the sheriff by other supervisors in the sheriff's department that were ignored by the sheriff;

b.      They have reviewed use of force reports and internal affairs files about incidents in which excessive force was used by the Rapid Response Team, but they have failed to take corrective action to discipline or retrain the officers involved or to otherwise prevent the continued violation of constitutional rights by the Team;

c.      They have viewed video of actual incidents in which the Rapid Response Team has used excessive force, but they have failed to take corrective action to discipline or retrain the officers involved or to otherwise prevent the continued violation of constitutional rights by the Team;

d.      They have refused to discipline Rapid Response Team members for the use of force, despite the fact that their use of force is routinely excessive and pervasive, and have made it clear on multiple occasions that they either endorse the conduct of the Team or will not instruct the Team to change its conduct;

e.      In the case of Sims in particular, have conducted oversight and training of the Rapid Response Team in which Team members have been directly

instructed to use force under situations where no force is justified, and in the case of Pinkard and Conway, have approved such oversight and training with deliberate indifference to the rights of Plaintiffs and the Class; and

f.      By failing to take appropriate action despite having actual knowledge of the unconstitutional conduct of the Rapid Response Team, Defendants have perpetuated a pattern and practice of excessive force in the jail that continues and will continue until stopped by this Court.

## FOURTEENTH AMENDMENT EXCESSIVE FORCE CLAIM

63.     As pretrial detainees, Plaintiffs and the Class have a Fourteenth Amendment right to be free from the use of excessive force against them.

64.     There was no factual or legal justification at any time relevant herein for the Rapid Response Team to use force against Plaintiffs or members of the Class.

65.     Plaintiffs and the members of the Class were all subjected to the use of excessive force in violation of the Fourteenth Amendment because the force used against them by the Rapid Response Team was not applied in a good faith effort to maintain or restore discipline, but maliciously or sadistically for the very purpose of causing harm under circumstances where the use of force was gratuitous, unnecessary, and entirely punitive.

66.    The law was clearly established at all times herein that an inmate cannot be subjected to malicious and sadistic force (including prolonged unnecessary restraint) used solely for punitive or retaliatory purposes and not in a good faith effort to maintain order and discipline, and accordingly, Defendants are not entitled to qualified immunity for directing and encouraging the use of excessive force against Plaintiffs and the Class by the Rapid Response Team.

67.    At all times relevant herein, Defendants maintained a custom or policy of permitting the Rapid Response Team to use punitive force and restraint against inmates who were deemed uncooperative under circumstances where there was no constitutional justification for the use of force, and said custom or policy amounted to deliberate indifference to the rights of Plaintiff and the Class to be free from the use of excessive force against them.

68.    Defendants' custom or policy of permitting the use of punitive force and restraint by the Rapid Response Team resulted in a culture of systemic abuse of inmates and deliberate indifference to the constitutional rights by the Rapid Response Team, because Team members who violated the rights of Plaintiffs and the Class believed that they were acting consistently with departmental policy as implemented and enforced by Defendants.

69.    The aforementioned customs, policies, and conduct of Defendants

proximately caused the violation of the constitutional rights of Plaintiffs and the Class.

70.    In addition to being directly liable for their own involvement in training and commanding the Rapid Response Team, Defendants have supervisory liability under 42 U.S.C. §1983 for the violation of the constitutional rights of Plaintiffs and the Class by the Rapid Response Team because Defendants' custom or policy of permitting the use of punitive force and restraint has caused pretrial detainees such as Plaintiffs and the Class to be unconstitutionally subjected to excessive force as a result of Defendants' deliberate indifference to such rights.

71.    The law was clearly established at all times herein that a supervisor such as the Defendants cannot be deliberately indifferent to the use of excessive force against inmates by subordinate officers, and accordingly, Defendants are not entitled to qualified immunity for purposes of supervisory liability under Section 1983.

72.    Defendants are liable for violating the Fourteenth Amendment rights of Plaintiffs and the Class, and not entitled to qualified immunity, for both their actions in causing the Rapid Response Team to violate such rights and for their omissions in failing to stop the continued violation of such rights, both of which resulted from the deliberate indifference of Defendants.

## <u>CLAIM FOR DAMAGES</u>

73.   As a direct and proximate result of the aforementioned unconstitutional conduct of Defendants, Plaintiffs and the Class have been deprived of their constitutional rights, have suffered bodily injuries and physical restraint, have endured and will continue to endure significant physical and mental pain and suffering and emotional distress, and have suffered actual damages that will be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

74.   Plaintiffs and the Class are entitled to recover compensatory damages from Defendants resulting from Defendants' unlawful conduct as alleged herein.

75.   Because the conduct of Defendants was malicious, intentional, and carried out in bad faith, Plaintiffs and the Class are entitled to recover punitive damages from Defendants.

76.   Plaintiffs and the Class are also entitled to recover reasonable attorney's fees under 42 U.S.C. §1988.

## <u>CLAIM FOR INJUNCTIVE RELIEF</u>

77.   The aforementioned conduct of the Defendants is continuing, and members of the Class are subject to future violations of their rights by the Rapid

Response Team based upon policies, training and direction provided by Defendants.

76.    It is also foreseeable that Plaintiffs and Class members who have already been subjected to the use of excessive force by the Rapid Response Team will be detained at the Gwinnett County Jail at some point in the future, at which point they would again be at risk of being subjected to excessive force due to the aforementioned conduct of Defendants.

77.    Plaintiffs and the Class have an interest in making sure that the unconstitutional practices complained of herein do not continue in the future and thus have standing to seek equitable relief on behalf of themselves and other Class members.

78.    Plaintiffs and the Class are entitled a declaration by the Court that Defendants' conduct as described above violates the rights of Plaintiffs and the Class under the Fourteenth Amendments to the United States Constitution.

79.    Plaintiffs and the Class are entitled to equitable relief enjoining Defendants, their successors, agents, servants, employees, and all those in active concert or participation with them from subjecting inmates in the Gwinnett County Jail to excessive force and abuse by the Rapid Response Team, and mandating that Defendants formulate and effectuate a remedy, subject to the Court's approval and

modification, if necessary, to end the practices and policies challenged in this lawsuit.

80.   The Court should retain jurisdiction in this case until the unlawful conditions, practices, policies, acts, and omissions complained of herein no longer exist and the Court is satisfied that they will not recur.

81.   As prevailing party on the claim for equitable relief, Plaintiffs and the Class are entitled to recover reasonable attorney's fees under 42 U.S.C. §1988.

**WHEREFORE,** Plaintiffs respectfully pray that this Court:

(a)   Cause process to issue;

(b)   Certify this case as a class action;

(c)   Conduct a trial by jury on all issues triable by jury;

(d)   Enter judgment awarding injunctive relief to prevent future violations of constitutional rights by Defendants and mandating remedial measures consistent with the injunction;

(e)   Enter judgment awarding Plaintiffs and the Class compensatory damages to compensate them for damages incurred as a result of Defendants' unlawful conduct;

(f)   Enter judgment awarding Plaintiff punitive damages in an amount sufficient to punish Defendants for their unlawful conduct and to deter Defendants

and others similarly situated from similar unlawful conduct in the future;

(g)     Award attorney's fees and expenses of litigation to counsel for Plaintiffs and the Class;

(h)     Tax all costs of this action against Defendants; and

(i)     Award Plaintiffs and the Class such other relief as this Court deems appropriate.

**<u>A JURY TRIAL IS HEREBY DEMANDED.</u>**

Respectfully submitted this 5th day of July, 2013.

<div style="margin-left:40%">

PAGE PERRY, LLC
*/s/ Craig T. Jones*_____
Craig T. Jones
Georgia Bar No. 399476
Lead Counsel for Plaintiffs

</div>

1040 Crown Pointe Parkway
Suite 1050
Atlanta, Georgia  30338
(770) 673-0047 Phone
(770) 673-0120 Fax
cjones@pageperry.com

<div style="margin-left:40%">

LAW OFFICE OF JOHN G. CICALA, JR., P.C.
*/s/ John G. Cicala, Jr.*_____
JOHN G. CICALA, JR.
Georgia Bar No. 125624
Counsel for Plaintiffs

</div>

P.O. Box 640
Grayson, Georgia  30017
(770) 879-5959 Phone
(770) 879-5515 Fax
litigator.jgc@gmail.com